(184 P.3d 280)
No. 97,806

Douglas Phillips, *Appellee*, v. St. Paul Fire & Marine Insurance Co., *Appellant*.

Opinion filed May 30, 2008.

*Stanley N. Wilkins* and *Jack D. McInnes V*, of Slagle, Bernard & Gorman, P.C., of Kansas City, Missouri, for the appellant.

*Donald W. Vasos* and *David A. Hoffman*, of Vasos Law Offices, of Fairway, for the appellee.

Before Greene, P.J., Elliot and Pierron, JJ.

Pierron, J.: St. Paul Fire & Marine Insurance Company (St. Paul) appeals the district court's decision to grant Douglas Phillips' partial summary judgment motion and to award him attorney fees. The outcome depends on the interpretation of K.S.A. 40-284(c) and K.S.A. 40-256.

This case began with an automobile accident. On March 18, 2003, Phillips, an employee of the Unified Government of Wyandotte County/Kansas City, Kansas (Unified Government), was injured when Robert Sengphong, an uninsured 13-year old, ran his vehicle into Phillips' truck.

Phillips filed suit against Sengphong, Mid-Century Insurance (Mid-Century), and St. Paul. American Family Insurance (American Family) insured Sengphong's vehicle but originally disclaimed coverage. However, it soon reversed its decision and tendered its $100,000 policy limit. Phillips amended the suit and dismissed his claim against Sengphong. The damage exceeded $150,000.

St. Paul provided automobile insurance coverage for Kansas City, Kansas, in 1996, 1997, and 1998. In 1998, the governments of Wyandotte County and Kansas City, Kansas, merged to form the Unified Government. St. Paul continued to provide automobile

coverage for 1999. From 1996 to 1999, the Unified Government requested that St. Paul limit its uninsured/underinsured motorist (UM) coverage to $50,000. Between 2000 and 2002, Insurance Company of the West and Coregis Insurance Co. provided the automobile insurance for the Unified Government. During this period, the Unified Government continued to have UM coverage with a limit of $50,000.

In 2003, the Unified Government resumed its insurance coverage with St. Paul. This policy provided automobile liability coverage of $500,000 for each incident. St. Paul referred to the 2003 policy as new and gave the Unified Government a new policy number. The "General Information" sheet in St. Paul's underwriting file describes the policy as a new business. The Unified Government failed to properly complete the excess UM coverage rejection form, which would again have limited the policy to $50,000 UM coverage, although it intended to do so. The paperwork for the policy was signed on April 28, 2003, but it was not delivered to St. Paul until August 5, 2003. On August 28, 2003, St. Paul still knew the rejection form had not been properly completed. The policy showed that the Unified Government had $50,000 in UM coverage, not $500,000.

Both Phillips and St. Paul filed motions for summary judgment on the issue of the amount of UM coverage. The district court granted Phillips' motion for partial summary judgment for a finding of $500,000 in coverage and denied St. Paul's motion for a finding of $50,000 in coverage. The court found that the Unified Government purchased a new policy with St. Paul in 2003 and did not properly reject the excess UM coverage. Therefore, the court found that St. Paul refused to pay Phillips without just cause or excuse. It concluded, after taking into account the $100,000 paid by American Family, that the UM coverage available to Phillips under the policy was $400,000.

The case proceeded to an arbitration hearing at which Phillips was awarded $174,773.04 in damages. The district court then heard testimony from Jerry Levy, a Lawrence attorney, who testified as an expert witness on attorney fees. Levy reviewed all aspects of the case and determined that Phillips' attorney earned $69,990.21 in

attorney fees. Levy fully explained his reasoning and was cross-examined by St. Paul's attorney.

On October 30, 2006, the district court incorporated and adopted the award from the arbitration hearing and, since it found St. Paul had refused to pay without just cause within the meaning of K.S.A. 40-256, adopted the attorney fees recommended by Levy. St. Paul appeals. We reverse because we find that under K.S.A. 40-284(c) the previous rejection of the higher benefit, under the statute, operated as a rejection of the higher benefit and cost in the new contract.

St. Paul first argues the district court did not correctly interpret K.S.A. 40-284(c). We agree.

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citations omitted.]' " *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

K.S.A. 40-284 provides the law regarding UM coverage. The Kansas Supreme Court has concluded that this statute is remedial in nature and should be liberally construed to provide protection to the insured against damages caused by the uninsured or under-insured. See *Simpson v. Farmers Ins. Co.*, 225 Kan. 508, 512, 592 P.2d 445 (1979). However, subsection (c), because it detracts from the public goal of protecting the insured, must be narrowly and strictly construed. See *Larson v. Bath*, 15 Kan. App. 2d 42, 43-44, 801 P.2d 1331 (1990), *rev. denied* 248 Kan. 996 (1991).

Subsections (a) and (b) of K.S.A. 40-284 provide that an insurance policy must provide UM coverage equal to the policy's liability limits for bodily injury and death. If the policyholder rejects the higher coverage, the critical subsection (c) states:

"Unless the insured named in the policy requests such coverage in writing, such coverage need not be provided in any subsequent policy issued by the same insurer for motor vehicles owned by the named insured, including, but not limited to, supplemental, renewal, reinstated, transferred or substitute policies where the named insured had rejected the coverage in connection with a policy previously issued to the insured by the same insurer." K.S.A. 40-284(c).

Under this statute, if the Unified Government did not specifically, in writing, reject UM coverage in excess of the policy limits, St. Paul would provide $500,000 in coverage, the amount equal to the policy's liability limits. However, if it did reject the insurance, St. Paul would provide $50,000 in coverage.

St. Paul asks this court to interpret the statute to find that the Unified Government rejected excess UM coverage in its 2003 policy through its previous rejections. We believe, under the facts of this case, the statute requires this finding. "The interpretation of a statute is a question of law over which this court has unlimited review. An appellate court is not bound by the trial court's interpretation. [Citation omitted.]" *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

St. Paul's argument relies on the specific language of the statute. After an insured has rejected excess UM coverage in writing, it need not be specifically rejected in "*any* subsequent policy issued by the same insurer . . . where the named insured had rejected the coverage in connection with *a* policy previously issued to the insured by the same insurer." (Emphasis added.) K.S.A. 40-284(c).

" 'Ordinary words are to be given their ordinary meanings without adding something that is not readily found in the statute or eliminating that which is readily found therein.' [Citation omitted.]" *State v. McElroy*, 281 Kan. 256, 262, 130 P.3d 100 (2006). The plain language of the statute provides that once an insured has rejected excess UM coverage, it need not specifically reject it again for *any* subsequent policy. The legislature provided no limiting or conditioning language. Nothing in the statute suggests that there needs to be continuous coverage by the same insurer for the written rejection exemption to apply. For example, this argument would find that if an insured was covered by Allstate in 1997 and rejected the excess UM coverage, then switched to State Farm

from 1998 to 2007, and returned to Allstate in 2008, that the insured would not need to reject in writing the higher UM coverage.

It would be helpful if we can determine the legislature's intent in amending the statute.

"The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.]" *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007).

The Kansas Supreme Court has discussed legislative intent behind K.S.A. 40-284(c):

"It appears that the legislature in subsection (c) intended to simplify further rejections in subsequent policies by the same parties by requiring the named insured to request in writing the higher coverage if desired. Where the parties remain the same and the coverage remains virtually identical, requiring further rejections within that existing relationship would run counter to the legislative intent to simplify the rejection process. Yet, there would be cases where coverage lapsed or where the terms of the coverage markedly changed within that relationship to signal that the new policy issued was not 'supplemental to a renewal policy' requiring a new rejection." *Mitchell v. Liberty Mut. Ins. Co.*, 271 Kan. 684, 695, 24 P.3d 711 (2001).

While *Mitchell* interpreted K.S.A. 40-284(c) as it existed in 1981, it also discussed the 1986 amendment. This amendment added "*any* subsequent policy issued by the same insurer for motor vehicles owned by the named insured, including, *but not limited to*, supplemental, renewal, reinstated, transferred or substitute policies." (Emphasis added.) L. 1986, ch. 173, sec. 1.

"An argument can be made that this subsequent change was an expansion of the circumstances where a prior rejection would remain effective and signifies that the prior law limited the continuing effect of the rejection only to those policies which explicitly provided that they were 'renewal' policies. [Citation omitted.] However, an equally valid argument can be made that the amendment in 1986 merely worked a clarification of the initial language consistent with the legislature's intent to simplify the rejection process. We believe that the latter interpretation is more consistent with the intent of the legislature, and where one policy replaces another policy between the same parties and contains substantially the

same provisions, it qualifies as a 'renewal' policy under the statute." *Mitchell*, 271 Kan. at 696-97.

In addition, other aspects of the language of the statute support this argument. K.S.A. 40-284(c) states that when an insured rejects UM coverage, the insurer need not provide it in subsequent policies, "including, but not limited to, supplemental, renewal, reinstated, transferred or substitute policies." K.S.A. 40-284(c).

" 'The maxim *expressio unius est exclusio alterius, i.e.*, the inclusion of one thing implies the exclusion of another, may be applied to assist in determining actual legislative intent which is not otherwise manifest, although the maxim should not be employed to override or defeat a clearly contrary legislative intention. [Citation omitted.] Under this rule, when legislative intent is in question, we can presume that when the legislature expressly includes specific terms, it intends to exclude any items not expressly included in the specific list. [Citations omitted.]' " *In re Tax Application of Lietz Constr. Co.*, 273 Kan. 890, 911, 47 P.3d 1275 (2002).

However, *expressio unius est exclusio alterius* is not properly applied here because the statute, although listing various policy transactions, specifically states the list is *not* exclusive by using the words "but not limited to."

It appears that the specific wording of the statute resolves this issue. The legislature wanted to simplify the process of choosing between the two benefit levels. While the first choosing of the lower benefit must be in writing, the statute presumes the level will then stay the same unless specifically altered.

Especially under the facts of this case, the results of the application of the language of the statutes are in no way unfair. Only 3 years had passed between the time of St. Paul's initial coverage and its renewal of the relationship. The Unified Government wanted the lower (and less costly) benefits and even attempted to fill out the form, although unsuccessfully.

Phillips urges that a St. Paul employee requested that a new rejection form be filled out, perhaps because that employee thought it would be necessary. The employee's incorrect interpretation of the law would not, under these facts, change the provisions of the law. It obviously was a good business practice to get a new rejection letter; however, that does not change the fact that it was not necessary. Unified Government was in no way prejudiced

by getting the cheaper coverage it wanted. The statute involved caused that to occur. As noted above, the policy specifically declared the Unified Government had the lower coverage.

We find St. Paul's coverage was limited by the earlier rejection to $50,000. Therefore, we reverse the decisions at the district court level. Since St. Paul was correct in contending its coverage was limited to $50,000, attorney fees against St. Paul are not appropriate.

Reversed and remanded.

ELLIOT, J., dissenting. I dissent. As did the majority, I garner guidance from *Mitchell v. Liberty Mut. Ins. Co.*, 271 Kan. 684, 24 P.3d 711 (2001).

The *Mitchell* court held that a rejection of the excess UM coverage in 1984 controlled an accident occurring in policy year 1991. See *Mitchell*, 271 Kan. at 688. *Mitchell* was controlled by the 1981 amendment of K.S.A. 40-284(c) which provided that unless the named insured requested higher uninsured motorist coverage than required by law, the higher coverage need not be provided in or supplemental to a " '*renewal policy* where the named insured had rejected the coverage in connection with a policy previously issued to the insured by the same insurer.' " (Emphasis added.) 271 Kan. at 691 (quoting L. 1981, ch. 191, sec. 1).

The present case involves the 1986 amendment to the statute which added the "*any* subsequent policy issued by the same insurer," including, but not limited to, supplemental, renewal, reinstated, transferred, or substitute policies language. L. 1986, ch. 173, sec. 1.

The *Mitchell* court discussed the 1986 amendment even though it was not directly involved in the case. The court observed that an argument could be made that the change in 1986 was an "expansion" of the statute because it is presumed when the legislature changes language in a statute, it intends to change the meaning. *Mitchell*, 271 Kan. at 696-97.

The *Mitchell* court rejected this argument, favoring instead a ruling that the 1986 amendment "merely worked a clarification" of the 1981 amendment emphasizing the *replacement* aspects of the policies. *Mitchell*, 271 Kan. at 697.

In ruling the 1984 rejection of the higher UM coverage controlled the 1991 accident scenario, the *Mitchell* court on numerous occasions emphasized the continuous relationship between insured and insurer. "Continual coverage existed between UPS and Liberty over an extended period of time." 271 Kan. at 696. "[R]equiring further rejections within that existing relationship would run counter to the legislative intent to simplify the rejection process." 271 Kan. at 695.

In *Mitchell*, the uncontroverted facts established that UPS dealt *exclusively* with Liberty over an extended period of time for more than 20 years. 271 Kan. at 696.

Simply stated, the *Mitchell* court's ruling relies heavily, if not exclusively, on the long-term, unbroken relationship between insured and insurer. The *Mitchell* court even remarked about problems created in situations where coverage lapsed or where the terms of coverage markedly changed. 271 Kan. at 695.

Given this, I am not able to ascribe to the legislature an intent that a rejection of high-end uninsured/underinsured coverage once given controls for all time, even after a break in the relationship between insured and insurer.

This brings us to the facts of the present case. St. Paul covered Kansas City, Kansas, in 1996, 1997, and 1998. In 1998, Kansas City, Kansas, and Wyandotte County merged to form the Unified Government, and in 1999, St. Paul covered the Unified Government.

But in 2000, 2001, and 2002, the Unified Government went elsewhere for its insurance coverage. In 2003, the Unified Government returned to St. Paul for coverage. One could argue that the Unified Government had only a 1-year prior relationship with St. Paul.

How did the parties treat the Unified Government's return to St. Paul's bosom in 2003?

St. Paul booked the policy as *new business*. To me, "new business" does not evoke images of a prior or significant relationship.

And St. Paul certainly acted as if it thought it needed a new rejection form—because it demanded one. The Unified Govern-

ment certainly acted as if it needed to provide a new rejection—because it attempted, albeit unsuccessfully, to provide one.

Given all this, I would affirm.