No. 97,806

DOUGLAS PHILLIPS, *Appellee,* v. ST. PAUL FIRE & MARINE
INSURANCE CO., *Appellant.*
(213 P.3d 1066)

522

*Stanley N. Wilkins*, of Slagle, Bernard & Gorman, P.C., of Kansas City, Missouri, argued the cause, and *Jack D. McInnes V*, of the same firm, was with him on the briefs for appellant.

*Donald W. Vasos*, of Vasos Law Offices, of Fairway, argued the cause, and *David A. Hoffman*, of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: This case arises out of a 2003 accident between a Unified Government of Wyandotte County and Kansas City, Kansas (Unified Government), street department truck occupied by employee Douglas Phillips and a vehicle driven by a juvenile. Phillips filed suit against his insurance company, Mid-Century Insurance Company (Mid-Century); the Unified Government's insurance company, St. Paul Fire & Marine Insurance Company (St. Paul); and the juvenile. After settling with the juvenile and dismissing the action against Mid-Century, Phillips pursued this suit against St. Paul for underinsured motorist (UIM) benefits. Both parties filed motions for summary judgment. The district judge granted Phillips' motion and awarded him attorney fees. We granted Phillips' petition for review from a divided Court of Appeals decision reversing and remanding to the district court in *Phillips v. St. Paul Fire & Marine Ins. Co.*, 39 Kan. App. 2d 758, 184 P.3d 280 (2008).

Initially, three issues present themselves: Was the Unified Government's earlier rejection of a $500,000 UIM coverage limit controlling for its 2003 St. Paul Policy? Was the district court correct in determining that St. Paul denied Phillips' UIM claim without just cause or excuse, making St. Paul liable for Phillips' attorney fees? And, if so, was the amount of the attorney fees awarded by the district court reasonable?

### Arguments and Procedural History

Phillips contends that St. Paul's UIM coverage limit for its 2003 policy is $500,000. St. Paul contends that the 2003 policy for the Unified Government limits UIM coverage to $50,000 under a writ-

ten rejection of the higher coverage limit signed by the insured for a policy issued for an earlier year. Both parties invoke K.S.A. 40-284(c), which provides that an insured has a right to reject the otherwise statutorily required higher UIM coverage limit. The statute also states:

"A rejection by an insured named in the policy of the uninsured motorist coverage shall be a rejection on behalf of all parties insured by the policy. Unless the insured named in the policy requests such coverage in writing, such coverage need not be provided in *any subsequent policy* issued by the same insurer for motor vehicles owned by the named insured, including, but not limited to, supplemental, renewal, reinstated, transferred or substitute policies where the named insured had rejected the coverage in connection with a policy previously issued to the insured by the same insurer." (Emphasis added.)

There is no dispute that St. Paul provided automobile insurance to the Unified Government in 2003. It had not done so in 2000, 2001, or 2002; but it had done so in 1999. In 1999, Unified Government Risk Manager David Coleman signed a Kansas Uninsured Motorist Coverage Excess Limit Rejection form, making the UIM coverage limit $50,000 rather than $500,000. When the Unified Government resumed its relationship with St. Paul in 2003, Coleman again signed a UIM rejection form but forgot to include the $50,000 UIM coverage limit on the form. St. Paul employees noted that the 2003 rejection form had not been properly completed, yet St. Paul issued a new policy to the Unified Government. The policy's Auto Coverage Summary listed the $50,000 UIM limit, and Coleman stated that $50,000 was the amount of coverage the Unified Government intended to obtain from St. Paul in 2003. The parties do not dispute that $50,000 is the amount of UIM coverage the Unified Government paid for in the 2003 policy year.

The district judge ruled in favor of Phillips in this dispute, having been persuaded that the 2003 rejection form constituted "an unlawful attempt to condition, limit or dilute" mandatory UIM coverage.

On appeal to our Court of Appeals, the majority of the panel reviewed our decision in *Mitchell v. Liberty Mut. Ins. Co.*, 271 Kan. 684, 24 P.3d 711 (2001), and concluded that a policy that " 'replaces another policy between the same parties and [that] con-

tains substantially the same provisions . . . qualifies as a "renewal" policy under [K.S.A. 40-284(c)].' " *Phillips*, 39 Kan. App. 2d at 762-63 (quoting *Mitchell*, 271 Kan. at 697). In addition, the panel majority ruled that an insured who had chosen a lower benefit limit in writing would continue to have coverage subject to that lower limit until the limit was specifically altered. Under this reasoningthe Unified Government thus "rejected excess [UIM] coverage in its 2003 policy through its previous rejections," despite the gap between its 1999 and 2003 policies with St. Paul. 39 Kan. App. 2d at 761.

Judge Jerry G. Elliott dissented, stating that the Court of Appeals' majority's reliance on *Mitchell* was misplaced: "Simply stated, the *Mitchell* court's ruling relies heavily, if not exclusively, on the long-term, unbroken relationship between insured and insurer. The *Mitchell* court even remarked about problems created in situations where coverage lapsed or where the terms of coverage markedly changed. [Citation omitted.]" 39 Kan. App. 2d at 765 (Elliott, J., dissenting). Judge Elliott would have affirmed the district court's decision in favor of Phillips.

On petition for review, Phillips makes what are, essentially, policy arguments. He insists that the rejection provision of K.S.A. 40-284(c) must be narrowly applied to achieve the intended protection of the UIM coverage mandate. He also argues that a 1986 amendment to the statute and *Mitchell* contemplated "a continuing business relation between the same parties and no lapses in coverage" to trigger rejection of a higher UIM limit. A contrary reading of the statute, he asserts, can lead to absurd results, leaving an insured with a lower UIM coverage limit because of an old rejection that has been forgotten.

In response, St. Paul makes a "plain meaning" argument that K.S.A. 40-284(c)'s language is clear and unambiguous. Under its reading of the statute, even if the 2003 rejection form was legally ineffective, the Unified Government's 1999 written rejection of a higher UIM coverage limit was controlling. St. Paul further argues that *Mitchell* does not apply to this case because *Mitchell* analyzed an earlier version of the statute and that, in any event, *Mitchell*

never required a continuing business relationship between the insured and insurer to extend and enforce an earlier rejection.

## Standard of Review

" ' " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" ' " *Troutman v. Curtis*, 286 Kan. 452, 454-55, 185 P.3d 930 (2008) (quoting *Nungesser v. Bryant*, 283 Kan. 550, 556, 153 P.3d 1277 [2007]).

Because there is no factual dispute in this case, our review is unlimited. *Cooke v. Gillespie*, 285 Kan. 748, 754, 176 P.3d 144 (2008). In addition, statutory interpretation raises a question of law on which this court has unlimited review. *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359, 361, 204 P.3d 1156 (2009).

The most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). Our first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

"When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent." *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007).

We agree with St. Paul that K.S.A. 40-284(c) is plain and unambiguous. Specifically, 40-284(c) states that valid UIM rejection

forms will remain in force and effect for "any subsequent policy" with the same insurer unless the insured requests a change in writing. The "any" in the phrase "any subsequent policy" is deliberately broad and indefinite. It explicitly includes several types of subsequent policies but, again explicitly, is not limited to those listed. See *Higgins*, 288 Kan. at 364 (K.S.A. 2008 Supp. 44-510k[c] phrase "include, but . . . not limited to" exemplary, not exclusive). Because the validity of the 1999 rejection is unchallenged, it controls the UIM coverage limit on the 2003 policy. The 2003 rejection form, although imperfectly filled out and therefore subject to attack when standing alone, certainly does not constitute a written revocation of the 1999 rejection or an election to obtain or pay for the higher UIM coverage limit of $500,000. It is no surprise that Coleman's affidavit is completely consistent with this reading of the necessarily uncontested documentary evidence.

Although we need not rely upon either, we also note that neither legislative history nor our decision in *Mitchell* compels a ruling in favor of Phillips. *Mitchell* analyzed the 1981 version of 40-284(c), which continued the legal effect of a previous written rejection only when there was a "supplemental to a renewal policy," not when there was "any subsequent" policy. K.S.A. 40-284(c) (Ensley 1981). Under the now ineffective statutory language, we said:

> "It appears that the legislature in subsection (c) intended to simplify further rejections in subsequent policies by the same parties by requiring the named insured to request in writing the higher coverage if desired. Where the parties remain the same and the coverage remains virtually identical, requiring further rejections within that existing relationship would run counter to the legislative intent to simplify the rejection process. Yet, there would be cases where coverage lapsed or where the terms of the coverage markedly changed within that relationship to signal that the new policy issued was not 'supplemental to a renewal policy' requiring a new rejection." *Mitchell*, 271 Kan. at 695.

Both the Court of Appeals' majority and the dissent attributed more significance to this paragraph and its discussion of the meaning of a "renewal policy" than they now deserve. Simply put, under the current language of 40-284(c), the 2003 policy need not qualify as a renewal policy for the 1999 rejection to control. Similarly, the *Mitchell* court's emphasis on the importance of a continuing rela-

tionship between the insured and insurer—with no lapse as we had here between 1999 and 2003—matters only to the identification of a "renewal policy," not to the identification of "any policy," which is the language before us now. Compare K.S.A. 40-284(c) with K.S.A. 40-284(c) (Ensley 1981). The fact that the 2003 policy was "new" does not mean it was not "subsequent."

In the face of clear and controlling language in the current version of K.S.A. 40-284(c), Phillips' policy arguments are unavailing. We are not free to adopt a new policy or to alter the language chosen by the legislature. See *Higgins*, 288 Kan. at 364. K.S.A. 40-284(c) is plain and unambiguous. It governs. When an insured has previously rejected a higher coverage limit for statutorily mandated UIM insurance, that rejection controls any subsequent policy issued by the same insurer to the same insured for such insurance unless the insured has revoked the earlier rejection in writing. The subsequent policy need not be a renewal policy, and an intervening lapse in coverage or the business relationship of the insured and insurer does not automatically revoke an earlier rejection.

Summary judgment in favor of St. Paul is required. The second and third issues set forth initially regarding the propriety and the amount of the attorney fees award to Phillips are moot, as our decision on the merits requires the award to be vacated.

The judgment of the district court is reversed, and the attorney fees award is vacated. The judgment of the Court of Appeals is affirmed.