The Honorable Jo Ann Pottorff Representative, Eighty-Third District State Capitol 176-W 300 S.W. 10th Avenue Topeka, Kansas 66612
Dear Representative Pottorff:
As a legislative member of the State Use Law Committee (Committee), you present two issues concerning the State Use Law (SUL), K.S.A. 2010 Supp. 75-3317 through 75-3322c. First, you ask whether the exemption in K.S.A. 2010 Supp. 75-3319(d) and75-3321 applies when a Unified School District (USD) simultaneously purchases a product and services associated with that product. Your other concern is whether the specification provision in K.S.A. 2010 Supp. 75-3319(a) applies when a USD requires a vendor to provide certain services associated with a purchased product. Our analysis begins with a review of the statutes governing purchases and the SUL.
The Director of Purchases (Director) is the head of the Division of Purchases in the Department of Administration[1] and has the authority to purchase "supplies, materials, equipment or contractual services for state agencies."[2] Generally, purchases by the state require competitive bidding and are awarded to the lowest responsible bidder.[3] One exception to the competitive bid process is "when any statute authorizes another procedure or provides an exemption from the provisions of this section."[4]
The SUL is an exception to the competitive bidding process because purchases are from "qualified vendors."[5] A "qualified vendor" is defined as:
 "a not-for-profit entity incorporated in the state of Kansas that:
 (1) Primarily employs the blind or disabled;
 (2) is operated in the interest of and for the benefit of the blind or persons with other severe disabilities, or both;
 (3) the net income of such entity shall not, in whole or any part, financially benefit any shareholder or other individual; and
 (4) such qualified vendor's primary purpose shall be to provide employment for persons who are blind or have other severe disabilities."[6]
The purpose of the SUL is to assist blind or severely disabled persons achieve personal independence through useful and productive employment by providing a market for their products and services, thereby decreasing their dependence on assistance while contributing to the economy of the state and encouraging community involvement.[7] The implementation of the SUL is explained below.
The SUL created the Committee within the Department of Administration to advise the Director on issues surrounding the purchase of products pursuant to the SUL.[8] The Director, with the recommendation of the Committee, approves "prices of products
manufactured or processed, and of services offered under [the SUL] by qualified vendors."[9] K.S.A. 2010 Supp. 75-3320 describes the procedure for the approval and publication of a catalogue listing the products and services offered by qualified vendors.
The pertinent part of K.S.A. 2010 Supp. 75-3319(a) governing thepurchase of products by a USD states: "Those products offered for purchase by or for a [USD] shall meet specifications required by the board of education of the [USD]." K.S.A. 2010 Supp. 75-3321 governs the purchase of services for aUSD:
 "The [Director] and any person or officer authorized to purchase materials, supplies and services for any state agency or [USD] shall purchase, except as otherwise provided in this section, the products and services on the list certified by the [Director] from qualified vendors, when those products are to be procured by or for the state or [USD] or when those services are to be procured by or for the state. Services offered for purchase are not required to be purchased by a [USD]."[10]
Similarly, K.S.A. 2010 Supp. 75-3319(d) provides that "[t]he provisions of [the SUL] shall not be construed to require a [USD] to purchase services offered by qualified vendors under this act."
A waiver from the mandatory purchase requirements is authorized by K.S.A. 2010 Supp. 75-3322(a):
 "Whenever the qualified vendors are unable to supply the products or services needed or are unable to meet delivery requirements on any order or requisition, a written waiver shall immediately be forwarded to the [Director] by the state agency procurement officer or purchasing officer of the [USD]. If approved by the [Director], such waiver shall relieve and exempt the state or [USD] purchasing authority from the mandatory provisions of [the SUL] in the case of the specific order, request or requisition."
Thus, a USD must purchase products from a qualified vendor under the SUL, but not services. Additionally, a USD can set specifications for the purchase of a product and can also request a waiver for the purchase of a product if the qualified vendor cannot supply the product or meet the delivery requirements.
As you note, the SUL does not define the term "services" or address the purchase of products that include "services" as a component of the purchase. To determine whether a USD can avoid the SUL by combining a service with a product listed in the SUL catalogue, we look to the legislative history of the provisions authorizing a USD to set specifications for a product and exempting a USD from the purchase of services.[11]
The SUL originated in 1949, applying only to state purchases of products and "special services in the nature of piano tuning, cane seating, mattress making and like special employment."[12] When amended in 1953, the SUL applied only to the purchase of products by the state.[13] In 1979, the legislature amended the SUL to include the purchase of products by a USD and to allow the board of education to set the specifications for the purchase of a product by a USD.[14] At the request of the Kansas Association of School Boards, the Senate Committee on Education also adopted another amendment authorizing a waiver for USD purchases if qualified vendors were "unable to submit price quotations which are competitive with other suppliers; "[15] however, this amendment was not a part of the enacted bill.[16]
In 1985, the legislature amended the SUL to require state agencies to purchase services from qualified vendors, but not USDs.[17] One proponent testified the amendment excluded USDs from the purchase of services because a statewide bidding process for USDs did not exist.[18] The proponents explained the term "services" referred to work as a janitor, groundskeeper, car washer, and other contracted services deemed appropriate by the Department of Purchasing.[19] The reason for the amendment was the national economy was moving from production-oriented jobs to service-oriented jobs. Rehabilitation facilities responded by providing "training in more marketable occupational skills, such as janitorial and ground crews."[20] Based upon this legislative history, it is reasonable to conclude that the term "services" in the SUL relates to contracts for unskilled labor.
We also note that at the hearing on the 1985 amendment, the representative for the United School Administrators testified that a USD should be exempt from the requirements for the purchase of products and services when "it is prudent and cost effective to do so;" however, no Senate Committee on Education member moved for such exemption.[21] Thus, in 1979 and 1985, the legislature clearly rejected exempting the USD from the SUL if a qualified vendor was not the lowest bidder for the purchase of a product. As a result, a USD must purchase products pursuant to the SUL rather than a competitive bid process.
You have also asked that our analysis consider K.S.A. 2010 Supp. 72-6760, the statute governing purchases for school districts under the School Unification Acts. In pertinent part, K.S.A. 2010 Supp. 72-6760 reads:
 "(a) Except as provided by [subsection (b)], no expenditure . . . for the purchase of materials, goods or wares shall be made by the board of education of any school district except upon sealed proposals, and to the lowest bidder.
 (b) The provisions of subsection (a) do not apply to expenditures by a board of education for the purchase of:
 (1) Services [and]
 (2) products required to be purchased under the [SUL]."
The language in subsection (b)(2) was added in 1979, [22] which is the same year that the SUL was amended to allow a board of education to set the specifications for purchasing a product for or by a USD. The legislature added the language in subsection (b)(1) in 1991.[23] The KSAB and Unified School Administrators testified that an amendment in the prior year appeared to require school boards to follow the mandatory bidding process for the purchase of services. Subsection (b)(1) clarified that school boards were not required to bid for the services of architects, attorneys, or those who provide "service contracts on computers, heating systems, etc."[24]
Based upon the above legislative history, the term "services" in K.S.A. 2010 Supp. 72-6760(b)(1) is much broader than the term "services" in the SUL. As used in the SUL, the term "services" refers only to the "services provided in Kansas by qualified vendors."[25] Such services are listed in the SUL catalogue that the Director approves[26] and involve unskilled labor not associated with the purchase of a product. The term "services" in K.S.A. 2010 Supp. 72-6760(b)(1) similarly refers to unskilled labor and to skilled and professional labor not associated with the purchase of a product.
You provided two scenarios for our consideration. First, a USD combines a purchase for furnace filters listed in the SUL catalogue and a purchase for the delivery, installation, and maintenance of that specific product; however, the SUL vendor does not provide those services. Second, the USD purchases furnace filters listed in the SUL catalogue and includes specifications that the vendor deliver, install, and maintain these filters; however, the SUL vendor does not provide those services. The Committee questions whether this practice is a subterfuge to avoid the SUL requirements, thereby allowing the purchase of a product from a lower bidder and thwarting the public policy of the SUL.
In both of the above-described scenarios, the issue is whether the purchase qualifies as a purchase of a product that must be made from a qualified vendor or as a purchase of a service that is exempt from the SUL. In these simplistic scenarios, the SUL may control because the "services" being performed are incidental to the purchase of the product. In other words, there is no information explaining how the "services" are an integral part of the purchase — such as the product requires skilled delivery, installation, and maintenance or the warranty on the product is voided by unauthorized delivery, installation, and maintenance. Such information may qualify as a specification warranting a waiver. This involves a factual question that the Director resolves.[27]
To qualify as a purchase of services under the SUL or K.S.A. 2010 Supp. 72-6760, the purchase of the product would be incidental to the purchase of services. For example, in the above-described scenarios, the purchase of "services" would involve a comprehensive maintenance package for the heating system, which may incidentally include the purchase of products. The service package would require the vendor to do certain tasks — such as safety inspections, cleaning, adjustments, repairs, and maintenance — but would also include the replacement and installation of worn or broken parts and used filters. The performance of the total "services" keeps the heating system in optimum operating condition.
We offer the above guidelines for illustrative purposes only and suggest the Committee adopt regulations to guide the Director, qualified vendors, and USDs.[28]
In conclusion, the issue of whether the exemption found in K.S.A. 2010 Supp. 75-3319(d) and 75-3321 of the SUL applies when a USD combines the purchase of a product with the purchase of services associated with that product is a question of fact, not law. Similarly, the issue of whether the specification provision in K.S.A. 2010 Supp. 75-3319(a) of the SUL applies when a USD requires a vendor to provide certain services associated with a purchased product is a question of fact, not law. Nevertheless, a USD cannot evade the SUL by merely combining the purchase of a product with the purchase of a service associated with the purchased product (such as delivery, installation, and maintenance) that the SUL vendor does not provide.
Sincerely,
 Derek L. Schmidt Attorney General
 Janet L. Arndt Assistant Attorney General
DLS:AA:JLA:ke
[1] K.S.A. 75-3737a.
[2] K.S.A. 2010 Supp. 75-3738(a).
[3] K.S.A. 2010 Supp. 75-3739(a) and 75-3740(a).
[4] K.S.A. 2010 Supp. 75-3739(a)(4).
[5] K.S.A. 2010 Supp. 75-3319(c).
[6] K.S.A. 2010 Supp. 75-3317(b).
[7] 2011 Kansas State Use, Products and Services Catalog Online, www.ksstateuse.org/2011_State_Use_Catalog.pdf
[8] K.S.A. 2010 Supp. 75-3722c(a), (e).
[9] K.S.A. 2010 Supp. 75-3319(a).
[10] Emphasis added.
[11] The fundamental rule of statutory interpretation is that the legislature's intent governs if it can be ascertained. In doing so, we give ordinary words their ordinary meaning. We move to the next analytical step, applying canons of construction or relying on legislative history, only if the statute's language is unclear or ambiguous. Phillips v. St. Paul Fire Marine Ins. Co.,289 Kan. 521, 525 (2009).
[12] L. 1949, Ch. 278, §§ 1-2.
[13] L. 1953, Ch. 392, § 1-6.
[14] L. 1979, Ch. 288, § 3(a). See also Minutes, Senate Committee on Education, March 19, 1979 (Dr. M. A. McGhehey testified that local school boards preferred to establish their own standards for the purchase of products).
[15] Minutes, Senate Committee on Education, March 22, 1979, Attachment 1.
[16] L. 1979, Ch. 288, § 6.
[17] L. 1985, Ch. 281, § 2(a), (c), (d), § 3(a)-(b), and § 4.
[18] Minutes, House Committee on Education, February 27, 1985, Attachment 5.
[19] Id. at Attachments 1, 2, 3, and 5.
[20] Id. at Attachment 5.
[21] Id. at Attachment 1.
[22] L. 1979, Ch. 230, § 1(c).
[23] L. 1991, Ch. 226, § 10.
[24] Minutes, Senate Committee on Education, February 27, 1991, Attachments 8 and 9.
[25] K.S.A. 2010 Supp. 75-3319(c), (d).
[26] See K.S.A. 2010 Supp. 75-3320 and 75-3321.
[27] See K.S.A. 2010 Supp. 75-3322(a).
[28] See K.S.A. 2010 Supp. 75-3322c(e)(5).