NOT DESIGNATED FOR PUBLICATION

No. 122,710

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GARY MATHEWS,
*Appellant*,

v.

CITY OF MISSION HILLS, KANSAS BOARD OF ZONING APPEALS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Opinion filed February 11, 2022. Affirmed.

*Patrick B. Hughes*, of Adams Jones Law Firm, P.A., of Wichita, for appellant.

*George F. Verschelden* and *Anna M. Krstulic*, of Stinson LLP, of Kansas City, Missouri, for appellee.

Before WARNER, P.J., CLINE, J., and WALKER, S.J.

PER CURIAM: The Kansas City Country Club (KCCC), which operates a golf course, submitted two applications to the Architectural Review Board (ARB) for the City of Mission Hills, Kansas (City), seeking a building permit to install a permanent electrical fan and supportive electrical equipment on hole 12 so the green could be maintained more efficiently. The ARB held numerous hearings concerning the installation of the fan. During those hearings it heard testimony for and against the installation. Individuals who worked at the KCCC testified in favor of the installation, while several residents who owned homes near the green on hole 12 argued against the

1

installation. KCCC withdrew its first application before the ARB ruled on it. When it refiled its application at a later date, the same concerns and responses were reiterated and discussed at length.

At issue during the hearings were provisions of the Code of Ordinances of the City of Mission Hills (Code). The ARB eventually approved the KCCC's application, and the City's Board of Zoning Appeals (BZA) later affirmed the ARB's decision. Gary Mathews, one of the residents who had been outspoken against the installation of the fan, filed suit against the City in district court and argued the BZA's decision should be reversed. After a bench trial, the district court affirmed the decisions of the ARB and BZA.

Mathews appeals, arguing that the ARB failed to follow the proper procedure from the City's Code when voting on KCCC's application. He also argues the evidence presented controverted the ARB's conclusion that the installation of the fan would not adversely affect the surrounding property values, and the district court erred in affirming the ARB's decision. Additionally, he argues the district court erred when it affirmed the ARB's imposition of conditions on the use of the fan.

After careful review, we find that the ARB complied with the applicable Code provisions when it approved KCCC's application and hold that the district court's decision affirming the ARB's conclusion that the fan would not impact the surrounding property values was reasonable. Finally, we find that the district court did not err when it affirmed the use conditions imposed by the ARB, because the Code allowed for such conditions. As a result, we affirm the district court's judgment in its entirety.

FACTS

In April 2017, the ARB met and reviewed a building permit application from the KCCC, which proposed to install two new fans and related electrical equipment for the

2

greens on holes 12 and 18 of the golf course. Loren Breedlove, the superintendent of the KCCC, said the golf course already had permanent fans on 14 of the 18 greens. He explained that fans are beneficial to greens because they increase air circulation, which is important because it helps lower the temperature of the grass and soil during days of high heat and humidity. Without the increased air circulation, the high temperature and humidity harms the grass.

Breedlove also explained that the KCCC used temporary fans with generators on greens 12 and 18 in the past because those fans did not require installation of permanent electrical hookups, which would require ARB approval. However, the KCCC wanted to install the permanent electrical fans because they are quieter than the temporary fans. Specifically, the electrical fans emitted approximately 60 decibels at 50 feet, compared to the sound of the portable fans, which emitted approximately 77 decibels at 50 feet. Breedlove said the KCCC planned to run the fans from sunrise to sunset. Breedlove also said the fans run on a timer.

An attorney then spoke in front of the ARB. He represented residents who lived near the green on hole 12 and were concerned about the impact of the permanent fan on that hole. Those residents opposed the installation of the electric fan because of the noise it would produce, and argued the noise prevented them from using their decks and other outside areas of the residences. Some of those residents also were present at the meeting and made statements about the proposed fan to the ARB.

Mathews, who lived near hole 12, reiterated many of the concerns the attorney had previously raised. He said the fan would interfere with the enjoyment of his home and compared the noise of the fan to a dripping faucet or a fire alarm that constantly beeps because it needs a new battery. Mathews had lived near hole 12 for approximately 27 years and never noticed any sort of problem with it, though he did say that he often noticed workers removing moisture from the green. He also said the installation of the

3

fan would negatively affect the value of his home because he would have to disclose its existence to any prospective buyer. Other residents who addressed the ARB echoed Mathews' concerns.

Breedlove responded by saying the fans would only be used during days of high heat and humidity, and the KCCC planned to only use the fans from sunrise to sunset. He reiterated the importance of the health of the grass on the greens and explained that the green on hole 12 did not get much air circulation due to its topography. He also explained that, despite some of the residents' testimony about their opinions concerning the green on hole 12, other KCCC members did not share their opinion that the green was in pristine condition.

The ARB subsequently continued the discussion about the fan installation so that tests could be done concerning the noise the fans emitted and the distance of the proposed fan from the nearby homes. However, since it was unopposed, the ARB approved the installation of a fan on hole 18.

The ARB discussed the installation of the fan again in May 2017. The Mission Hills City Administrator announced that the City had arranged for testing with Avant Acoustics (Avant), which had been completed. Before testing, Avant's acoustical expert spoke with the expert working with the attorney that testified at the April hearing, and the attorney's expert did not have a problem with the testing procedures. Due to a lack of electricity on hole 12, Avant could not complete testing for the electric fan on that hole. However, Avant tested the noise from an electric fan on hole 10, which produced comparable results.

The City Administrator said that City policy limited noise to 70 dBA at 30 feet. The noise level from the portable fan powered by a generator on hole 12 emitted 75.3

dBA at 30 feet, while the testing on the electric fan at hole 10 revealed that the noise of an electric fan was 7.4 dBA lower than the noise from a portable fan with a generator.

The attorney that testified at the April hearing said he had hired an acoustical expert, Brian Kubicki, who was also present during the testing. Kubicki conducted his own measurements in addition to those done by Avant, which he presented to the ARB. He compared the topography of the green on hole 12 to an amphitheater, which meant that sounds would rise to higher locations. He also read from the Code regarding unnecessary noises. In Kubicki's opinion, the noise produced by the fans violated the City's noise ordinance.

After the ARB heard the conclusions from both sound experts, various residents that lived near hole 12 once again made comments. Like the hearing in April, the residents who spoke expressed their disapproval of the permanent electric fan being installed on hole 12. The ARB once again continued the discussion until a later hearing so the City Attorney could be present. However, before the ARB could reconvene to consider the matter, the KCCC withdrew its application to install the fan.

In August 2017, Mathews filed a lawsuit against the KCCC regarding the use of the portable fan and generator on hole 12. As relief, he sought an injunction against the KCCC regarding the use of the portable fan. He also sought damages from the KCCC because of the nuisance created by the noise of the portable fan. Though not clear from the record, apparently no further activity has occurred on Mathews' lawsuit, likely because of the ARB's and BZA's ultimate decision allowing installation of a permanent electric fan on the 12th green.

In February 2018, the KCCC resubmitted an application for a building permit so it could install the permanent electric fan on hole 12. The ARB met and discussed the application later that month. At the hearing, the ARB incorporated the record from the

2017 hearings, which included the ARB minutes, letters from residents, acoustic testing reports, and other data submitted.

Nathan Stewart, the general manager of the KCCC, told the ARB that the proposed equipment did not violate any City guidelines or Code provisions. John Daniels, an agronomist for the United States Golf Association, Breedlove, and the representative of Avant also made statements. Daniels and Breedlove both argued in favor of the fan and explained why it needed to be installed. The representative of Avant recounted the results from the previous tests on hole 12 and the sound emitted from the fans.

Mathews again spoke against the installation of the fan. He read from multiple Code provisions he believed would be violated by the installation and operation of the permanent fan. Bernie Shaner, a real estate appraiser, gave the ARB copies of an appraisal he completed on Mathews' property. In his opinion, Mathews' property value increased because it abutted the golf course. Shaner also indicated that installation of the permanent fan, if approved, would decrease Mathews' property value by approximately $135,000.

Kubicki also recounted his findings from the sound testing he previously completed. Other residents also argued against the installation of the fan due to the noise and how it could affect their property values. Nick Christians, a professor of horticulture at Iowa State University, told the ARB that a fan did not need to be installed on hole 12 to maintain it in reasonably satisfactory condition. At the conclusion of the hearing, the ARB again voted to continue the discussion so it could compare the noise from the portable fan and an electric fan in person and review the information submitted at the hearing.

In March 2018, the ARB reconvened and discussed the issue further. At the outset, the ARB noted that the installation of the electrical fan and associated equipment would

not conflict with any of the City's Code or with any design guidelines. Stewart again testified and referred to the comments he previously made to the ARB. Chris Shank spoke against the installation of the fan and argued that it failed to meet the requisite factors under the Code. He also referred to Shaner's previous comments about decreased property values. Stewart subsequently responded that the KCCC contested the claim that property values would be decreased because of the fan. During the hearing, a member of the ARB made a motion to move the discussion into an executive session to allow the ARB members to receive legal advice regarding the installation of the electric fan. The ARB then approved the motion and went into closed executive session.

When the ARB resumed its open hearing, legal counsel for the ARB then read the five factors listed in Mission Hills City Code § 5-146 required for approval of a building permit, and stated that if any ARB member did not agree that any of the factors had not been met, they must not vote to approve the KCCC project. The ARB members then agreed the findings under the provision of the Code had been met and voted to approve the building permit for the project with the following stipulations:  (1) The fan could only run from 8 a.m. to 5 p.m., (2) the fan could only operate from June 1 to September 30 each year, and (3) the fan could only operate on days where the forecast temperature exceeded 85 degrees. Four of the five ARB members voted to approve the project and one abstained from the vote. None of the ARB members voted against approval.

Following the ARB's approval of the building permit with the three restrictions, both the KCCC and some of the residents appealed the ARB's decision to the BZA. The BZA held a hearing in May 2018 to decide the matter. After one of the BZA members read the applicable BZA bylaws and zoning regulations, Shank spoke on behalf of the residents. Shank told the BZA that the residents believed the ARB made a mistake when they approved the building permit for the fan. He argued the fan was too close to the residents' homes and the fan would emit too much noise. He also noted Shaner's appraisal and the projected diminution in property value the residents would suffer if the BZA

7

approved the fan. Shank then stated the ARB did not adequately consider the applicable Code provisions the City had in place.

The KCCC had appealed to the BZA from the three restrictions the ARB had placed upon the use of a permanent fan on the 12th green. Mike McCann addressed the BZA on behalf of the KCCC. He reiterated the reasons the KCCC wished to install the fan. His arguments essentially mirrored the arguments made before the ARB. He acknowledged Shaner's previous statements that the golf course added value to the residents' homes, but the noise of the fan decreased the property value. But since the permanent electric fan would be quieter that the temporary one, he believed installation of the permanent fan would raise the residents' property value back up.

After McCann spoke, the BZA opened the floor to other citizens who wished to comment. Many residents spoke against the installation of the fan and used many of the same arguments made to the ARB. Breedlove then spoke in favor of the KCCC's application. The BZA then voted on the matter. By a vote of 3-0, it found that the ARB acted reasonably when it approved the KCCC's fan application. By another 3-0 vote, the BZA found the ARB acted reasonably when it applied use conditions on the operation of the fan.

In May 2019, Mathews filed suit against the City in district court. He argued the ARB acted unreasonably when it approved KCCC's application. He also complained that the ARB failed to set forth evidence that supported their decision regarding the five factors listed in the Code of Ordinances City of Mission Hills (Code) § 5-146. He contended the BZA's decision affirming the decision of the ARB should be reversed.

The City's response to Mathews' suit countered that the ARB was not required to make specific findings on each factor listed in Code § 5-146. The City also argued that Mathews failed to carry his burden to demonstrate the City's decision was unreasonable.

8

Finally, the City argued the installation of the fan would not adversely affect the residents' property values.

In October 2019, after a bench trial in the case, the district court issued its findings of fact and conclusions of law. The district court found that the fan would not adversely affect the property values of the surrounding properties, nor did it impact the health, safety, or general welfare of the City residents. Ultimately, the district court found that the ARB and BZA decisions were reasonable under the five factors listed in Code § 5-146 and affirmed their decisions.

Mathews has timely appealed from the district court's rulings.

ANALYSIS

*The ARB's decision to approve KCCC's building permit application*

As his first issue on appeal, Mathews argues the ARB erroneously approved the KCCC's application without making the required findings as stated in Code § 5-146. Specifically, in his appellate brief, for the first time Mathews complains that a preceding Code section, § 5-142(C), requires the ARB to approve a motion which explicitly sets forth the required findings under Code § 5-146. In response, the City argues that Mathews failed to preserve this argument for appeal. Alternatively, the City argues the ARB made the appropriate findings.

Generally, issues not raised before the district court cannot be raised for the first time on appeal. *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016).

Code § 5-146 states, in part:

"No plans or specifications submitted in connection with applications for a permit for exterior work filed pursuant to Section 5 1025 shall be approved by the ARB unless it finds:

. . . .

"B.   That the proposed Structure will not adversely affect the values of surrounding properties and will not adversely affect the health, safety, and general welfare of the residents of the City."

The City contends that "Mathews did not argue to the District Court that the ARB was required to make a determination by motion that the building permit application would not adversely affect the value of surrounding properties." Instead, Mathews argued before the district court that the KCCC's application should have been denied because the ARB failed to specifically find that the application would not adversely affect the property values of the residents' homes.

A review of the record reveals that the City's complaint is correct. In district court, Mathews argued that the Code required the ARB to find that every factor listed in Code § 5-146 had been satisfied before it could approve the KCCC's application. As noted, he specifically faults the ARB for not making particularized findings before granting its approval. Mathews acknowledges that the ARB generically agreed the five requisite factors, including no diminution of surrounding property values, had been met. But he complains that the ARB's action failed to *specifically* address the requirement of Code § 5-146 that the installation of the electric fan would not adversely affect the property values of the surrounding properties.

The City is also correct in noting that Mathews' theory on appeal differs significantly in emphasis from the arguments he made in district court. Notably absent from his argument before the district court judge is any allegation of a procedural deficiency by the ARB which would violate Code § 5-142. That section requires that any action of the ARB be taken based upon a motion by a member of the ARB to approve

10

such action. Instead, Mathews' arguments in district court largely concerned the factors from Code § 5-146. While acknowledging this change in his angle of legal attack in his reply brief, Mathews argues that we can address the issue under an exception to the general rule regarding issues not raised in the district court.

As our Supreme Court has previously explained, the exceptions to the general rule that an appeal cannot be taken from a matter not raised in district court include the following: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights, and (3) the district court was right for the wrong reason. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).

Mathews argues that the first and second exceptions apply to the issue. He is correct as to the first exception. The issue fits within it because the issue is a pure question of law. As such, we will address his issue on the merits.

"Statutory construction is a question of law subject to de novo review, even when a court reviews a decision of a zoning board." *Layle v. City of Mission Hills*, 54 Kan. App. 2d 591, 595, 401 P.3d 1052 (2017) (citing *Zimmerman v. Board of Wabaunsee County Comm'rs,* 289 Kan. 926, 939, 973, 218 P.3d 400 [2009]). Similarly, the interpretation of a regulation is also subject to de novo review. *Layle*, 54 Kan. App. 2d at 595.

As we previously noted, Mathews now argues on appeal the ARB could only approve the KCCC request upon motion by a member of the ARB which specifically contained the required findings listed in Code § 5-146. To support his argument, he cites Code § 5-142C., which states, in part, that "[a]ll matters requiring a decision of the ARB shall be determined upon a motion by a member."

11

While at first glance the differences between Mathews' old and new complaints about the ARB's decision may seem too nuanced to distinguish, in reality the differences in his disparate approaches before the district court and our court are relatively simple to grasp. Before the district court Mathew's case was built around the argument that the ARB made a substantive error in its findings under Code § 5-146. Now, on appeal, he contends that the real defect in the ARB's action was a procedural one, i.e., failure to follow the specific method for approval of actions set out in Code § 5-142.

The record indicates that during the hearing in March 2018, before the ARB originally approved KCCC's application, George Verschelden, legal counsel for the ARB, told the ARB members they must agree that all five factors listed in Code § 5-146 had been met to approve KCCC's application. He warned that if any ARB member did not believe that any of the five factors had been met, they must not approve the application. He then read all five factors listed in Code § 5-146 to the ARB members.

The minutes of the ARB hearing stated the following after Verschelden read the five factors:

"The ARB agreed that the findings had been met. [ARB member Dorsey] Troutman stated that the ARB has heard from residents from the cities of Mission Hills and Fairway, both in favor of the fan and objecting to the fan. The ARB has also received information and testimony from experts in their respective field. He said that the ARB has approved golf course fans at several locations before and recognizes that the City desires to have a world class golf course. Mr. Troutman moved to approve the electrical equipment and the fan at the 12th green with the following stipulations: the electric fan can only run from 8:00 a.m. to 5:00 p.m., it can only run from June 1 to September 30 each year, and can only run on days when the temperature is forecasted to exceed 85 degrees. [ARB member Tim] Woofter seconded. **Approved 4-0-1.** [ARB member Gail] Cluen abstained."

Our court has previously stated:

"'Although strongly encouraged, a governing body is not required to make formal findings of fact concerning its decisions regulating land use. It is more important that there exists a record of what the governing body considered before making its decision so that the reviewing court is not left in a quandary as to why the decision was made.'" *Evans v. City of Emporia*, 44 Kan. App. 2d 1066, 1071, 243 P.3d 374 (2010) (quoting *Zimmerman*, 289 Kan. at 926, Syl. ¶ 11).

Mathews acknowledges the rule from *Evans*, but he argues that Code § 5-142 reverses that rule. However, he fails to elaborate on that conclusion. Reading Code §§ 5-142, 5-146, and *Evans* in tandem, we find there is no conflict. The question the ARB decided was whether to approve KCCC's permit. The language of Code § 5-146 makes clear that the ARB can only approve a permit if all five findings are made. The minutes from the hearing reflect that the ARB agreed the findings had been made before it made the decision to approve KCCC's permit application.

If a municipal ordinance is plain and unambiguous, we must give effect to its express language. Moreover, we do not "speculate on legislative intent and will not read the ordinance to add something not readily found in it. If the language of the ordinance is clear, we have no need to resort to canons of statutory construction." *Layle*, 54 Kan. App. 2d at 596 (citing *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 272-73, 241 P.3d 15 [2010]).

Mathews' argument before us attempts to add a requirement not readily found in Code §§ 5-142 and 5-146. The language of Code § 5-142 does not require that an ARB member move to make explicit findings under Code § 5-146. It simply requires that any actions it takes must originate as a motion from a member of the body. Based upon the record before us, we find that the ARB followed the proper procedure set out in Code § 5-142 when it approved KCCC's permit application.

13

Mathews goes on to argue that ARB member Troutman's statements prior to reading the five factors were ambiguous. Similarly, Mathews argues that Troutman's statements in support of the motion were inconsistent with his conclusion that the fan would not adversely affect property values, as required by Code § 5-146. However, his claims are belied by the record. Troutman clearly noted that there was a division of sentiment and evidence concerning the impact of the permanent fan on the 12th green. His motion to approve KCCC's application indicates that he found the views of those favoring the permanent fan to be more persuasive.

To reiterate, during the hearing attorney Verschelden read the five findings which the ARB was required to make in order to approve KCCC's building permit. When doing so, he stated that "[i]f any ARB member does not agree that one of the findings has been met, that member must not vote to approve the project." Verschelden's statement accurately reflected what Code § 5-146 states. As such, the statement is not ambiguous.

After Verschelden read the five findings, Troutman stated that the ARB agreed the findings had been met. As previously stated, the ARB is not required to make formal factual findings. See *Evans*, 44 Kan. App. 2d at 1071. Thus, Troutman's statements before moving to approve KCCC's application have no bearing on that issue. After making his statements, he complied with Code § 5-142 and moved for the ARB to approve the application, which it later voted to do.

Finally, Mathews, relying on *Dragon v. Vanguard Industries, Inc.*, 282 Kan. 349, 356, 144 P.3d 1279 (2006), argues the lack of specific findings made by the ARB precludes meaningful appellate review and he urges us to remand the case for the district court to make additional findings. But again, his argument is unpersuasive in light of the rule from *Evans*. The record accurately reflects what the ARB considered before making its decision to approve KCCC's application. Accordingly, we are not "'left in a quandary

14

as to why the decision was made,'" and we reject Mathews' argument. *Evans*, 44 Kan. App. 2d at 1071.

*The ARB's decision that the permanent fan would not adversely affect the values of surrounding properties*

In his second point on appeal, Mathews contends that the record did not support a finding that the fan would not adversely affect the values of the surrounding properties. To the contrary, he claims that the undisputed evidence before the ARB demonstrated that the values of surrounding properties would, in fact, be adversely affected.

Mathews contends the KCCC presented no evidence that electric fans on golf courses near residences "(a) are not noisy, (b) do not irritate homeowners, (c) do not limit homeowners' use of their outdoor living spaces, (d) do not make their homes less attractive to potential buyers, or (e) do not negatively affect the values of their properties."

When an administrative board of a municipality, such as the ARB or BZA, acts on a request such as KCCC's application for a building permit, it exercises quasi-judicial authority. "'The term "quasi-judicial" is applied to administrative boards or officers *empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of a judicial nature*.'" *Friends of Bethany Place v. City of Topeka,* 297 Kan. 1112, 1131, 307 P.3d 1255 (2013). Logically, a municipal board which weighs evidence must necessarily make credibility determinations about witnesses and their testimony in reaching its decision. In our case, this means that the ARB and BZA were entitled to determine the weight and credit to be given to the testimony of all witnesses, including homeowners and expert witnesses, in deciding whether property valuations would be adversely affected by the KCCC's application.

In making its decision to approve KCCC's request, the ARB clearly found that installation of the wiring necessary to operate the electric fan on hole 12 would have no adverse effect on property values. On appeal, Mathews contends that the ARB's finding was not supported by the evidence at the hearing, given the noisiness of the fans KCCC proposed to install, the homeowners' diminished enjoyment of their outdoor spaces, and the appraiser's opinion that nearby property values would suffer. Thus, before us Mathews questions the sufficiency of the evidence which the ARB and BZA relied upon in approving KCCC's application.

In circumstances where, as here, the law requires that certain facts be found in order to reach a particular result, our task consists of reviewing the record to determine whether the requisite findings are supported by substantial competent evidence. *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System*, 212 Kan. 137, 144, 510 P.2d 160 (1973). "Substantial competent evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion." *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). If required findings are not supported by substantial competent evidence, the decision is "unreasonable because there is no basis in the record to support it." *Neeley*, 212 Kan. at 144.

In addressing Mathews' arguments that the evidence was insufficient to support the decisions of the ARB and BZA, we first note that it is something of a misnomer to label the request of KCCC as seeking to install permanent fans at hole 12. The application was for installation of permanent power supply to permit use of an electric fan or fans, rather than using fans powered by gas generators. But in addressing Mathews' specific arguments, it is undisputed that *any* fan, including a portable fan powered by a generator and one powered solely by a permanent electrical source, produces a certain amount of noise. Acoustical experts Avant and Kubicki both presented their findings and discussed them at the ARB hearings. Both Avant and Kubicki agreed the electric fan from a permanent electrical outlet is quieter than the portable fan powered by a generator.

And since there are no restrictions on KCCC's current use of the noisier portable fans, it logically follows that having quieter fans which are subject to the time, calendar, and temperature restrictions imposed by the ARB would not lessen property values any more than the status quo.

Code § 4-115 (previously codified at § 4-114) is the noise disturbance section of the City's Code. Code § 4-115(c)(1) states that something is a noise disturbance if it exceeds 60 dBA between the hours of 9 a.m. to 11 p.m. However, Code § 4-115(c)(5)(B)1. states that "machinery used to mow, fertilize or aerate golf course grass or rake sand traps may be operated between sunrise and sunset on any day and during such time shall not be subject to the dB(A) limits set forth in Section 9.16[4-115](c)(1)."

The district court cited this provision of the Code when it found the ARB's decision reasonable. It also stated that the use conditions placed on the fan alleviated many of the residents' concerns about the use of their property during nonbusiness hours. Whether the ARB erred when placing the conditions on the use of the fan will be addressed following this discussion. However, the district court's conclusion regarding the noise is pertinent to Mathews' second issue.

In *Brougham Estates Ltd. Partnership II v. Bd. of Trustees of Kansas City Kansas Community College*, No. 94,311, 2006 WL 2595238, at *1 (Kan. App. 2006) (unpublished opinion), the Board of Trustees of Kansas City Kansas Community College appealed the district court's decision ruling the noise from a motorcycle safety class was a nuisance and granting an injunction preventing the college from holding the classes in a campus parking lot adjacent to the apartment complex owned by Brougham Estates. The facts of the case demonstrated that the noise produced by the motorcycles could be annoying. But the *Brougham Estates Ltd. Partnership II* panel noted that "the central issue is not whether the noise from the classes was annoying. The issue is whether any

17

annoyance was both substantial and unreasonable." 2006 WL 2595238, at *1 (citing *Finlay v. Finlay*, 18 Kan. App. 2d 479, 485, 856 P.2d 183 [1993]).

In deciding the issue, our court recognized that the city ordinances regarding noise from motorcycles did not control because there was no evidence the noise from the motorcycles violated the ordinances, and the college was exempt from the ordinances. 2006 WL 2595238, at *1. Ultimately, the panel concluded the evidence did not "support a conclusion that the noises from the motorcycle classes constituted a substantial and unreasonable interference, especially in light of the fact the noises do not occur during an unreasonable time of day." 2006 WL 2595238, at *2.

Here, the facts are similar. By stating the fans are noisy, Mathews' argument is analogous to a nuisance claim. Since Code § 4-115 exempts golf course machinery used to aerate golf course grass from the noise ordinance, and the ARB imposed conditions pertaining to when the KCCC could operate the fan, we have no basis to reverse the district court's decision based on the noise emitted from the fan.

This court's decision in *Brougham Estates Ltd. Partnership II* is also persuasive on Mathews' second and third arguments, i.e., that the fan would irritate homeowners and limit the use of their outdoor living spaces. The ARB only allowed the fan to operate from 8 a.m. to 5 p.m. from June 1 to September 30 each year, and it could only be used when the forecast temperature exceeded 85 degrees. Thus, the noises emitted from the fan would not occur during an unreasonable time of day. See 2006 WL 2595238, at *2.

For his fourth and fifth arguments, that the installation of the fan would make the homes less attractive to potential buyers and would negatively affect the values of the surrounding homes, Mathews primarily relies on Shaner's appraisal and the testimony of the other residents who lived near the green on hole 12. As we have previously noted, many of the residents who spoke at the ARB hearings, including Mathews, stated their

18

belief that the installation of the fan would decrease the value of their property. Similarly, Shaner told the ARB that the installation of the fan, if approved, would decrease Mathews' property value by approximately $135,000.

As support, Mathews cites our Supreme Court's statement that "'[i]t is well settled a landowner is a competent witness to testify as to the value of his [or her] property.'" *Manhattan Ice and Cold Storage, Inc. v. City of Manhattan*, 294 Kan. 60, 75, 274 P.3d 609 (2012). However, our Supreme Court cautioned that the rule does not mean a landowner is "equivalent to an appraisal expert or that he or she may parrot the opinions of experts as support for his or her fair market value." 294 Kan. at 76.

But Mathews does not contend he is an expert. He contends Shaner is the expert whose testimony matters. Additionally, Mathews contends that "the key aspect of [Shaner's] report was not the specific dollar impact of a golf-course fan or how it was computed . . . but that increases in noise levels negatively impact the values of residential properties."

In response, the City contends that Mathews is "actually asking this Court to hold that a landowner's testimony about the value of his or her property must be taken as true by the ARB." The City, relying on *In re Adoption of Irons*, 235 Kan. 540, 684 P.2d 332 (1984), also contends that the ARB is not required to accept Shaner's opinions. There, our Supreme Court stated that "[t]he opinion testimony of an expert is to be considered as any other testimony and should receive such weight and credit as the factfinder decides to give it." 235 Kan. at 546. The holding in *In re Adoption of Irons* buttresses our earlier observations about the role of the ARB as a quasi-judicial body able to make value judgments on the evidence it receives.

Unquestionably, this specific issue alleging that KCCC's proposal would lower property values is Mathews' most compelling argument. However, the record does not

demonstrate that the ARB made its decision arbitrarily. Nor does the record demonstrate that the ARB approved KCCC's application without considering Shaner's opinion regarding Mathews' property value.

Instead, the ARB held numerous hearings concerning KCCC's application. It allowed for the residents to voice their concerns with the installation of the fan, allowed others to voice their opinions supporting the installation of the fan, observed the operation of the different types of fans in person, and retained Avant to do sound testing. The ARB noted that no limitations, for noise or any other reason, prohibit the KCCC's use of gas generator-powered fans anywhere on the golf course, including operating at the 12th hole. And there is no disagreement that these temporary fans and their generators are louder than electric fans alone. It obviously follows that the use of quieter, stand-alone electric fans, as KCCC's application would allow, would not adversely affect property values near hole 12. The ARB weighed the aesthetic value of well-drained greens, apparently concluding the installation of wiring to permit use of an electric fan to help maintain a high quality golf course did not reduce nearby property values.

The bottom line here is that Mathews wishes us to reweigh the evidence before the ARB and come to the opposite conclusion. But we cannot do this. "Appellate courts do not reweigh evidence, assess the credibility of witnesses, or resolve conflicts in evidence and instead give great deference to the factual findings of the district court, including when a district court draws reasonable factual inferences from the evidence." *In re J.O.*, 308 Kan. 603, Syl. ¶ 5, 422 P.3d 1158 (2018). Although *In re J.O.* refers specifically to findings by a district court, we can discern no reason why the same legal principles would not apply to the ARB, a municipal body exercising quasi-judicial authority.

In *Leffel v. City of Mission Hills*, 47 Kan. App. 2d 8, 13, 270 P.3d 1 (2011), our court stated:

"Judicial review of a zoning board decision is limited to determining if the zoning board acted unlawfully or unreasonably. A court does not substitute its judgment for that of the administrative body and may declare an action unreasonable only when the evidence clearly demonstrates that the action was arbitrarily taken without regard to the benefit or harm to the community at large, including all interested parties. The property owner appealing the zoning board's decision bears the burden of overcoming, by a preponderance of the evidence, a presumption that the board acted reasonably."

In addition, "Kansas case law establishes a legal presumption that public officials act properly and administer acts within their authority regularly and lawfully." 47 Kan. App. 2d at 13.

Based on the standard of review, we find that the ARB's decision was supported by substantial competent evidence. We therefore conclude that the ARB acted reasonably when it approved KCCC's application. Consequently, the BZA and district court did not err when they affirmed the ARB's approval. Thus, we affirm the district court's judgment on this issue.

*The ARB's use conditions*

For his final point on appeal, Mathews argues the district court erred when it approved the use conditions imposed by the ARB.

As previously stated, the interpretation of a regulation is subject to de novo review. Similarly, statutory construction is a question of law which we review de novo. *Layle*, 54 Kan. App. 2d at 595; see also *Denning v. Johnson County Sheriff's Civil Service Bd.*, 299 Kan. 1070, 1077, 329 P.3d 440 (2014) (applying de novo standard of review when determining whether agency exceeded its scope of authority).

21

When ARB member Troutman moved to approve the electrical equipment and fan on hole 12, his motion included the following conditions: "the electric fan can only run from 8:00 a.m. to 5:00 p.m., it can only run from June 1 to September 30 each year, and can only run on days when the temperature is forecasted to exceed 85 degrees." Mathews argues the ARB did not have the power to impose requirements or conditions on the use of the fan.

Code § 5-149 lists the powers the ARB has when approving a permit application. It states:

"The ARB may within its power approve or deny a building permit application and in approving an application may attach such requirements and conditions as it deems appropriate under the circumstances, including but not limited to:
"A.     A redesign of the proposed structure;
"B.     Changes in the building materials for exterior facade of the proposed structure;
"C.     A reduction or increase in the height of the proposed structure;
"D.     A relocation of the proposed structure within required setbacks;
"E.     An increase in the required setback requirements for the lot in question;
"F.     A reduction or increase in the overall size of the structure;
"G.     Landscaping requirements which may include requiring new trees, shrubs or other landscaping, or replacing existing trees, shrubs or other landscaping; and
"H.     Requirements and conditions that the ARB is authorized to impose under other provisions of the Zoning Regulations;
"In addition to the foregoing powers, the ARB shall also have such other powers as have been delegated to the ARB under these Zoning Regulations and shall have such additional powers as are necessary to ensure that the ARB's responsibilities are fulfilled." Code § 5-149.

Mathews acknowledges the provisions included in Code § 5-149, but he argues that the ARB's powers are limited to the design or construction of the proposed structure and not its use. Specifically, he asserts that "[a]lthough the list of allowable conditions is

preceded by 'including but not limited to,' under the maxim of *expressio unius est exclusio alterius*, the types of allowed conditions should be limited to the types included in the list."

The maxim means "'the inclusion of one thing implies the exclusion of another.'" *Phillips v. St. Paul Fire & Marine Ins. Co.*, 39 Kan. App. 2d 758, 763, 184 P.3d 280 (2008) (quoting *In re Tax Appeal of Lietz Constr. Co.*, 273 Kan. 890, 911, 47 P.3d 1275 [2002]). There, Phillips filed suit against his insurance company after he got injured in an automobile accident. The district court granted summary judgment in favor of the insurance company, and Phillips appealed. This court concluded that the outcome of the case depended on the interpretation of K.S.A. 40-284(c) and K.S.A. 40-256. 39 Kan. App. 2d at 758.

Though neither statute applies to this case, in *Phillips* this court considered the maxim's application to K.S.A. 40-284(c). In doing so, this court stated that the maxim "is not properly applied here because the statute, although listing various policy transactions, specifically states the list is *not* exclusive by using the words 'but not limited to.'" 39 Kan. App. 2d at 763. In this case, Code § 5-149 includes this same phrase in its introductory paragraph.

Notably, Mathews fails to cite any authority to support his contention that the maxim applies here. As our court stated in *Phillips*: "'the maxim should not be employed to override or defeat a clearly contrary legislative intention.'" 39 Kan. App. 2d at 763 (quoting *Lietz*, 273 Kan. at 911). Code § 5-149 gives the ARB the power to attach "requirements and conditions as it deems appropriate under the circumstances." Because the list is not exhaustive, as evidenced by the "including but not limited to" language, we find that the maxim is inapplicable here.

Mathews' analogy between area and use variances and the conditions the ARB imposed here is also unavailing. As the City points out, K.S.A. 12-759(e) states the procedure a BZA must follow when it grants a variance. That statute also lists the conditions that must be met before a BZA can approve any variance and specifically limits the BZA's authority with respect to variances. But Mathews does not point to any statute that specifically limits the ARB's authority in the same way as the BZA is limited. And since the ARB's imposition of conditions does not conflict with Code § 5-149, we reject Mathews' line of reasoning on this point. Once again, we affirm the district court's judgment that the ARB was within its authority in imposing conditions on KCCC's use of the permanent fan on the 12th green.

Affirmed.